UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DONNA K PARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-74-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN COLVIN, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The Plaintiff, Donna Partin, brought this action pursuant to 42 U.S.C. §§ 405(g), 1383(c) to obtain judicial review of an administrative decision of the Commissioner of Social Security (Commissioner) denying Partin's application for supplemental security benefits (SSI). The Court, having reviewed the record and for the reasons set forth herein, will deny Partin's Motion for Summary Judgment [R. 7] and grant the Commissioner's [R. 8].[1]

I

Partin filed an application for SSI on August 11, 2009. [Transcript (Tr.) 124-127]. She alleges a disability beginning on October 13, 2003, due to left knee pain with osteopenia, chronic obstructive pulmonary disease, bilateral lower extremity edema, depression and mild mental retardation. [R. 7-1 at 3]. Partin's application was denied initially [Tr. 70] and upon reconsideration [Tr. 71]. Subsequently, at Partin's request, an administrative hearing was conducted before Administrative Law Judge Tommye C. Mangus (ALJ) on August 18, 2010.

---

[1] Partin moved the Court for an extension of time to file a response to the Commissioner's motion for summary judgment [R. 9] and then subsequently tendered that response. [R. 10]. Though the Court had not previously ruled on that motion, it has considered the response in preparing this Order and now formally grants the motion for extension of time herein.

[Tr. 31-51]. During the hearing, the ALJ heard testimony from Partin and vocational expert (VE) Bill Ellis. [Tr. 47-50]. Partin, who was forty-three years old at the time of the hearing, had an eighth grade education. [Tr. 18]. Partin has past relevant work experience, and the VE testified that she could perform that work as well as other work, and the ALJ accepted that testimony. [Tr. 18-24.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[2] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

In this case, at Step 1, the ALJ found that Partin has not engaged in substantial gainful activity since August 11, 2009, the date she applied for benefits. [Tr. 16.] At Step 2, the ALJ found that Partin has severe impairments consisting of depression, a history of polysubstance abuse disorder; a history of substance-induced mood disorder; and chronic obstructive pulmonary disease.[3] [*Id*.] At Step 3, the ALJ found that Partin's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 16-18]. At Step 4, the ALJ determined that Partin had not provided enough evidence to show her condition had significantly deteriorated, so she adopted the prior ALJ's residual functional capacity (RFC) and found that Partin could perform work at all levels of exertion with certain limitations. [Tr. 18-23]. The ALJ also concluded that Partin could return to her past relevant work as a sewing machine operator and food prep worker. [Tr. 23-24]. Although the case was decided before Step 5 was reached, the ALJ also determined that a significant number of other jobs could be performed in the national economy. [*Id*]. Accordingly, on August 18, 2010, the ALJ issued an unfavorable decision, finding that Partin was not disabled, and therefore, ineligible for SSI. [Tr. 25]. The Appeals Council declined to review the ALJ's decision on February 6, 2012 [Tr. 1-4] and Partin now seeks judicial review in this court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health &*

---

[3] For the purposes of this appeal, Partin focuses only on the "mental aspect of the case." [R. 7-1 at 3].

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

A

Partin claims that ALJ Mangus erred in both finding that her mental impairments do not meet the criteria of Listing 12.05(C) and in using the doctrine of *res judicata* as one basis for making that finding. Meeting all the criteria set forth in Listing 12.05(C) is one way a claimant may demonstrate that she suffers from mental retardation under the Listing of Impairments, so as to qualify for benefits. In order to satisfy the requirements of Listing 12.05(C), a claimant must show:

> (1) [she] experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period" (i.e., the diagnostic description); (2) [she] has a "valid

verbal, performance, or full scale IQ of 60 through 70"; and (3) [she] suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*West v. Com'r Soc. Sec. Admin.*, 240 F. App'x 692, 697-98 (6th Cir. 2007) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C); *Foster v. Halter,* 279 F.3d 348, 354–55 (6th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)). It was Partin's "burden at step–3 of the sequential analysis to demonstrate that her impairment met or equaled all the requirements of listing 12.05." *Carter v. Comm'r of Soc. Sec.*, 1:10-CV-804, 2012 WL 1028105 (W.D. Mich. Mar. 26, 2012) (citing *Kyle v. Commissioner,* 609 F.3d 847, 855 (6th Cir.2010)). No matter how severe, an impairment that only meets some of the criteria does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Whether Partin meets 12.05(C) was previously addressed by ALJ Letchworth in his prior unfavorable decision that denied Partin benefits. [Tr. 61]. In that decision, ALJ Letchworth found that Partin did not meet the criteria of Listing 12.05, primarily based on the fact that she did not meet the element requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). Specifically, ALJ Letchworth relied on the opinions of the state agency reviewing physicians, who found that "Mrs. Partin is no more than mildly limited in daily life activities and no more than moderately limited in social functioning, concentration, persistence, and pace." [Tr. 61]. ALJ Letchworth also noted that several of Partin's activities supported this finding, including that she is able to drive, cook, clean, manage money, and care for herself, which "supports a finding that she is able to maintain daily living activities with no problems, and maintain attention/concentration to perform simple, 1-2 step instructions and tasks." [*Id.*] Further, ALJ Letchworth opined that Partin's I.Q. scores

5

underestimate her actual intellectual function because "Ms. Partin's educational records show that she earned mostly As, Bs, and Cs while in elementary school, and that, although she failed some 9th grade classes, she received average grades in English and Mathematics." [*Id*.]

At the beginning of her decision addressing Partin's the most recently filed claim, ALJ Mangus indicated her intent to apply the doctrine of *res judicata*, stating "[t]he record shows the claimant filed a prior application for benefits that resulted in an unfavorable Administrate Law Judge (ALJ) decision on April 22, 2009. The claimant has not provided evidence to show her condition has significantly deteriorated since that decision; therefore, I find no reason to depart from the prior ALJ's residual capacity assessment." [Tr. 14]. The principles of *res judicata* apply in the context social security proceedings and "[a]n ALJ is obligated to follow the findings of fact made by a previous ALJ relative to the same claimant absent new or material evidence of an improvement in the claimant's condition." *Messer v. Astrue*, 09-342-DLB, 2010 WL 4791956 at *4 (E.D. Ky. Nov. 18, 2010) (citing *Drummond v. Commissioner,* 126 F.3d 837, 842 (6th Cir. 1997); SSAR 98–4(6) 63 Fed.Reg. 29771–01 (June 1, 1998)). Though ALJ Mangus does not again expressly indicate again her intent to rely on *res judicata* in the section devoted to the Step Three analysis, as correctly noted by the Commissioner, "[t]he so-called *Drummond* rule applies to a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability, where that finding was made in a final decision by an ALJ or the Appeals Council on a prior disability claim." *Id*. (citing SSAR 98–4(6); 63 Fed.Reg. 29771–01 (June 1, 1998)). In applying the *Drummond* rule, regulations provide the following guidance:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the [Social Security] Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the

> Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

SSAR 98–4(6), 63 Fed.Reg. 29771–01 (June 1, 1998).

Partin objects to any application of *res judicata* because she claims that this record contains new and material evidence that shows that her impairments now meet the criteria of Listing 12.05(C). In her initial motion for summary judgment, Partin appeared to represent that this new evidence was in the form of certain school records that were not before the previous ALJ, but had been submitted with this claim. [R. 7-1 at 10]. However, in her response to the Commissioner's motion for summary judgment, she conceded that ALJ Letchworth did have access to those records at the time he issued his decision. [R. 10 at 2]. She then clarified that Dr. Spangler's evaluation was the new and material evidence because, unlike the other psychological evaluations, Dr. Spangler had access to Partin's school records. [*Id.*] Based in part on these school records, Dr. Spangler concluded that Partin had at I.Q. of 69 at age six, required special education classes, and that her "mild mental retardation has been a life-long condition." [Tr. 674-75]. Notably, Dr. Spangler's report also contains the notation that, "School records show an evaluation on 10/10/73 that reveals and IQ of 69 which is mentally retarded." [Tr. 674].

There are several problems, however, with this evidence constituting the new and material evidence that bars the application of *res judicata.* First, the school records are not new. As conceded by Partin, the ALJ not only had access to them but expressly relied on the school records in detailing why Partin's I.Q. misrepresented her level of intelligence and functionality. [Tr. 61]. ALJ Lechtworth specifically noted that those records showed that until high school

7

Partin's grades were largely As, Bs, and Cs, and even in high school she obtained average scores in some classes. [*Id.*]

Second, it is unclear what new material information that Dr. Spangler's analysis adds to the record that was previously missing. He does note the low I.Q. score in Partin's youth, but Patin's low I.Q. score was well known to both ALJs and was not the criterion of Listing 12.05(C) that ALJ Lechtworth found wanting in his previous analysis. [Tr. 693]. Though Dr. Spangler's analysis seems to suggest that Partin's I.Q. renders her mildly mentally retarded for the purposes of his evaluation, that alone does not do so under listing Listing 12.05(C). *Compare* [Tr. 674] (wherein Dr. Spangler stated, "[s]chool records show an evaluation on 10/10/73 that reveal an IQ of 69 which is mentally retarded" *with Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 462 (6th Cir. 2012) ("The ALJ may choose to disregard I.Q. scores that would normally lead to a finding of disability when those scores were undermined by a doctor's full evaluation."). Instead, Partin's inability to show herself mentally retarded under Listing 12.05(C) has always stemmed from substantial evidence that she did not demonstrate sufficient deficits in adaptive functioning to meet Listing 12.05(C). [See Tr. 16-17, Tr. 59-50]. Toward this point, Dr. Spangler does also mention that Partin was in special education classes, but this fact is not readily apparent from the face of the school records, and is not novel information, as it is also recorded in the report of Dr. Baggs. [Tr. 673; Tr. 218-223; Tr. 575]. Further, participation in special education alone is not sufficient to satisfy the criteria of Listing 12.05(C). *See Carter v. Comm'r of Soc. Sec.,* 1:10-CV-804, 2012 WL 1028105 at *6 (W.D. Mich. Mar. 26, 2012) ("The same report indicates that plaintiff was attending special education classes….The only other school record plaintiff presented is a high-school transcript indicating that her grades were generally in the C or D range, and that she had problems with absenteeism. (A.R.385–86). Plaintiff's IQ scores and her

relatively poor grades did not establish the deficits in adaptive functioning required by listing 12.05. *See Hayes v. Commissioner,* 357 F. App'x at 677.").

Finally, as Partin concedes, Dr. Spangler does not qualify as a treating source and ALJ Mangus was not required to give his testimony any weight. [R.7-1 at 18]. In fact, ALJ Mangus expressly stated that she did not give Dr. Spangler's testimony weight because, "he apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept as true most, if not all, of what the claimant reported," despite that fact that ALJ had previously documented, "good reasons for questioning the claimant's subjective complaints." [Tr. 22]. Further, ALJ Mangus noted inconsistencies with Dr. Spangler's own opinion and also that he was retained through an attorney to generate evidence for the current appeal, not as a treating physician. [*Id.*] Thus, Dr. Spangler's discussion of Partin's school records is insufficient to preclude application the doctrine of *res judicata*, which, in absence of other new or material evidence, would biund ALJ Mangus to a finding that Partin does not meet the requirements of Listing 12.05(C).

Additionally, even if *res judicata* did not apply, ALJ Mangus's decision itself refers to substantial evidence from the record to support his conclusion that Partin is without sufficient deficits in adaptive functioning to qualify as mentally retarded under 12.05(C). "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 460 (6th Cir. 2012) (quoting *West v. Comm'r Soc. Sec.,* 240 Fed.Appx. 692, 698 (6th Cir.2007). ALJ Mangus relied on the examination of Drs. Mary Thompson and Dan Vandivir to find that Partin had only mild restrictions in daily living and moderate difficulties in social functioning. [Tr.16-17; Tr. 628; Tr. 598]. Partin's own testimony showed that she engaged in household tasks like cooking,

cleaning, and laundry, and that she was able to perform grooming and personal hygiene, money management, and shopping. [Tr. 16-17; Tr. 577-580]. Further, Partin stated that she associated with a friend one to two times per week, and also had personal relationships with her boyfriend and mother. [Tr. 16-17; Tr. 578]. Though ALJ Mangus noted Partin's low I.Q., she also properly highlighted her history of work activity as a sewing machine operator and a cushion maker, "which would generally require more than mildly retarded intellect to perform." [Tr. 16-17]; *see West v. Com'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) ("Substantial evidence supports the ALJ's conclusion that West did not experience deficiencies in adaptive functioning. Prior to the deterioration of his physical health, West held a long-term, full-time position with the City of Wilmore, demonstrating his ability to interact socially on a daily basis. Even after his health diminished, West continued to drive a garbage truck on a part-time basis, to care for his daily needs, to pay bills, to shop for groceries, to interact with friends and families, and to engage in numerous other daily activities."); *Carter v. Comm'r of Soc. Sec.,* 1:10-CV-804, 2012 WL 1028105 at *6 (W.D. Mich. Mar. 26, 2012); *Gulch v. Commissioner,* No. 1:11–cv–21, 2012 WL 651731, at * 7 (W.D.Mich. Feb.28, 2012); *Cheatum v. Astrue,* 388 F. App'x 574, 575 n. 2 (8th Cir. 2010). Further, ALJ Mangus also recognized that the record indicated that "the claimant has a long history of polysubstance abuse, which could certainly have impacted her intellectual functioning." [Tr. 16-18].

Though not discussed expressly in the ALJ's Step-Three analysis, the record also indicates that Dr. Baggs determined that Partin's intellectual functioning was in the borderline range. [Tr. 579-80]. He also found that her thought process demonstrated reality contact, her insight and judgment were fair, she did not exhibit mental confusion or disorientation, her remote and recent memory remained intact, she could remember simple instructions, she could maintain

concentration and persistence for task completion, and she could add and subtract. [Tr. 581].
Taken together, the Court finds this to constitute substantial evidence in support of the ALJ's
conclusion that Partin does not satisfy the elements of Listing 12.05 so as to be classified as
mentally retarded for the purposes of this analysis.[4]

B

1

Partin next takes issue with ALJ Mangus's analysis of Steps Four and Five. As required, ALJ Mangus first considered the evidence of the record to determine Partin's residual functional capacity (RFC). 20 C.F.R §416.920(e). The residual functional capacity assessment documents the most a claimant can still do in a work setting despite her limitations. 20 C.F.R. § 416.945. In articulating Partin's RFC, ALJ Mangus stated as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:
> the claimant should not be exposed to pulmonary irritants, temperature extremes, or excessive humidity. Additionally, the claimant should be limited to simple instructions performed in object-focused work that involves no more than occasional changes in a routine job setting and no more than occasional, casual contact with other persons.

[Tr. 18]. Notably, this is the same residual functional capacity as found by ALJ Letchworth in Partin's prior claim. [Tr. 62]. ALJ Mangus expressly recognized this fact stating, "[t]he record

---

[4] Partin's citation to *Dragon v. Commissioner of Social Security* does not alter this conclusion. 470 F. App'x 454. In *Dragon*, the Claimant had demonstrated a "wealth of evidence in support of her claims," school records that expressly noted functional deficiencies, an inability to pass any of her ninth grade proficiency tests, and failure at her previous jobs because she was slow. *Id*. at 463. Additionally, the ALJ improperly ignored or rejected much of this evidence, including the low I.Q. score from the claimant's childhood, on improper grounds. *Id*. In direct contrast, this case contained a wealth of evidence that Partin does not have deficits in adaptive functioning; her school records do not even expressly indicate she was in special education classes, let alone that detail functional capacity deficits; she had average scores in two of her ninth grade classes; and she has held jobs in the past and did not lose them simply because she was slow or could not work with others. *Dragon* is distinguishable, and does not require a finding that Partin meets the criteria of Listing 12.05(C).

shows the claimant filed a prior application for benefits that resulted in an unfavorable Administrate Law Judge (ALJ) decision on April 22, 2009. The claimant has not provided evidence to show her condition has significantly deteriorated since that decision; therefore, I find no reason to depart from the prior ALJ's residual capacity assessment." [Tr. 14]. As previously discussed, this application of *res judicata* was appropriate because there was no new and material evidence to the contrary. *See Messer*, 2010 WL 4791956 at *4 (citing *Drummond,* 126 F.3d at 842; SSAR 98–4(6) 63 Fed.Reg. 29771–01 (June 1, 1998)). Further, ALJ Mangus engaged in a thorough discussion of the record that independently established substantial evidence in support of the RFC for this claim.

After setting forth this RFC, ALJ Mangus found that Partin could return to her past work as a sewing machine operator and food prep worker, and also that other jobs existed in significant numbers in that national economy that she could perform. [Tr. 23-24]. In making this determination, the ALJ relied upon the responses of Vocation Expert William Ellis to a hypothetical question. [*Id.*] During the administrative hearing, the exchange between the ALJ and VE on this matter was as follows:

> [ALJ Mangus]: Mr. Ellis, if you would, for the first hypothetical, please assume claimant is age 43, she has a limited education, and past work experience as you just described. She has no exertional limitations, and – but she shouldn't have any exposure to pulmonary irritants, temperature extremes, or excessive humidity. From a mental standpoint, she can understand and remember simple instructions in an object focused work environment that involves no more than occasional changes in the routine job setting, and only casual contact with others. Under those limitations, could she return to any of her past work?
>
> [VE Ellis]: She could return to the sewing machine operator and the food prep operator, Your Honor.
>
> [ALJ Mangus]: In the alternative, could a hypothetical individual of the same age, education, and past work experience as the claimant with the same limitations perform other jobs that exist in the regional or national economy?

[VE Ellis] Yes, sir. She could…At the medium exertion level, would be a hand packer, 2,200 in the region, 163,000 in the nation. That's under DOT code 920.587-018. Production worker, 2,100 in the region, 100,000 in the nation, under DOT code 809.684-038. At the light exertional level, inspector, tester, 2,000 in the region, 98,000 in the nation. That's under DOT code 526.697-010. A machine feeder, 1,400 in the region, packaging and filling machine operator, 3,000 in the region, 164,000 in the nation. That's under DOT code 529.685-282. Those are representative not exhaustive lists. The region is the state of Kentucky, your honor.

[Tr. 48-49].

Partin takes issue with this hypothetical question posed by the ALJ and claims that because it is defective, any answers given to it by the VE cannot constitute substantial evidence for the ALJ's conclusions at Step Four and Step Five. Specifically, Partin notes that "in addressing the extent of restriction imposed by the claimant's mental impairments under the Listings, ALJ Mangus found moderate difficulty in social functioning and moderate difficulty in maintaining concentration, persistence and pace, as assessed by Drs. Vandivier and Thompson, the agency's reviewing psychologists," however, the ALJ did not advise the VE about these restrictions even though they were set forth by sources whose opinions the ALJ adopted. [R. 10 at 9]. Partin notes that the restrictions in social function were "arguably reflected" in the hypothetical question, but that the moderate restriction on maintaining concentration, persistence, and pace was not reflected therein. [R. 7-1 at 18].

In considering what a hypothetical question much include in order to be sufficient for Step Four and Five purposes, the Sixth Circuit has found that:

> the ALJ does not need to list a claimant's medical conditions in the hypothetical question posed to a VE. 368 F.3d 629, 633 (6th Cir.2004). Rather, the ALJ must include in the question an accurate calculation of the claimant's residual functional capacity—i.e., "a description of what the claimant 'can and cannot do.'

*Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (citing *Webb v.*

*Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir.2004); *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir.2002)). This is all that is required, and ALJ Mangus's hypothetical question has met this threshold. Partin concedes that the hypothetical question posed mirrors the RFC adopted by the ALJ. [R. 7-1 at 17]. In addition, the two agency psychologists referenced by Partin, Drs. Vandivier and Thompson, also completed a Mental Residual Functional Capacity Assessment, and each limitation in that assessment was clearly encompassed by the hypothetical question. [Tr. 584-85; Tr. 614-15]. The stated purpose of that Assessment was to evaluate mental activities "within the context of the individual's capacity to sustain that activity over a normal workday and workweek on an ongoing basis." [Tr. 584; 614].

The specific limitations that Partin claims to have been left out of the hypothetical question did not expressly appear in the Mental Residual Functional Capacity Assessment of the two psychologists, but in a separate form entitled the Psychiatric Review Technique.[5] [R. 598; R. 628]. This form expressly states that is relates the Listings analysis, which is the context of the ALJ's decision in which these conclusions are referenced. [*Id*.] In this form, the psychologists did find moderate limitations in social functioning as well as maintaining concentration, persistence, and pace. However, these limitations were certainly accounted for the psychologists' RFC Assessment, which more specifically indentified the moderate limitations in the categories of "sustained concentration and persistence" and "social

---

[5] In *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010), on which Partin relies, the parties disputed to what extent the hypothetical question should even encompass all of the sections of the Residual Functional Capacity Assessment of the examining sources. The court assumed for the purposes of analysis that the ALJ's hypothetical question need not incorporate the more specific findings of the Section I of the RFCA, yet the particular question asked was still deficient under the more general Section III. Here, Partin asks that the hypothetical question not only encompass the various portions of the RFCA, but also a separate form discussing the Listing of Impairments. It is questionable from *Early* whether this would be required, but even if it were, as discussed below, the ALJ's hypothetical question does actually cover the limitations discussed in the Psychiatric Review Technique form.

interaction." [Tr. 584-85; Tr. 614-15]. Specifically, the limitations documented under these headings were "ability to carry out detailed instructions," "ability to maintain attention for extended periods," and "the ability to interact appropriately with the general public." [*Id*.] The hypothetical questions directly included these restrictions when it limited the hypothetical claimant to work involving "simple instructions in an object focused work environment that involves no more than occasional changes in the routine job setting, and only casual contact with others." [R. 18]. Therefore, because the hypothetical question sufficiently encompassed Partin's limitations, even the restrictions suggested by Partin, the VE's answer to it constitutes substantial evidence for the ALJ's conclusions at Steps Four and Five.

2

Partin also argues that the ALJ's Step Four analysis is flawed because she found that Partin could return to her past work as a sewing machine operator even though *res judicata* and that fact that she had not performed that job to substantial gainful activity levels precluded her from doing so. However, as recognized by the Commissioner, the Court need not address these issues, because the ALJ also found at Step Five in the analysis that "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." [Tr. 24]. Having found that the hypothetical question was valid and constituted substantial evidence for the Step Five analysis, there remains no argument that the ALJ's decision at that step was improper. Thus, because Partin would be precluded from recovery of benefits under Step Five, any error at Step Four would be harmless and would not justify remand for further proceedings. 20 C.F.R §416.920(g)(1)("If you can make an adjustment to other work, we will find you not disabled."); *NLRB v. Wyman–Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709

(1969) (plurality opinion) (stating that where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"), citing by *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).  Substantial evidence once again supports the ALJ's finding that Partin is not disabled and that a significant number of jobs exist in the national economy in which Partin may work and meaningfully contribute to society.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Extension of Time [R. 9] is **GRANTED**;

(2) Plaintiff's Motion to Exceed Page Limitation [R. 7] is **GRANTED**;

(3) Plaintiff's Motion for Summary Judgment [R. 6] is **DENIED**;

(4) Defendant's Motion for Summary Judgment [R. 8] is **GRANTED**

(5) **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 30th day of September, 2013.

